```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                  Civil No. 17-340(DSD/KMM)
```

Bluestone Physician Services, P.A.,

      Plaintiff,

v.                                                              **ORDER**

Lora Moericke, Margaret Mattice
and Synergy Medical Services, LLC,

      Defendants.

    James C. Remington, Esq. and Husch Blackwell, LLP, 555 East Wells Street, Suite 1900, Milwaukee, WI 53202, counsel for plaintiff.

    Mark T. Berhow, Esq. and Hinshaw & Culbertson LLP, 333 South Seventh Street, Suite 2000, Minneapolis, MN 55402, counsel for defendants.

This matter came before the court upon the motion for a temporary restraining order (TRO) by plaintiff Bluestone Physician Services, P.A. The court denied the motion from the bench with this written order to follow.

**BACKGROUND**

Bluestone is a Minnesota corporation engaged in the business of providing on-site medical care to patients residing in assisted living facilities in Wisconsin, among other places. Compl. ¶¶ 1, 13, 15. Defendants Lora Moericke and Margaret Mattice began working at Bluestone as nurse practitioners in November 2015. Id. ¶¶ 16, 17. At the outset of their employment, both Moericke and

Mattice signed the Bluestone Employment Agreement (the Agreement). Id. ¶¶ 16, 17; see id. Exs. A and B. Under the Agreement, for a period of one year following termination of employment with Bluestone, neither Moericke nor Mattice shall:

> (a) provide similar onsite primary care services to any residential care facility serviced by [Bluestone] (a "Customer");
>
> (b) solicit, induce or attempt to induce any Customer to terminate or breach any written or oral agreement, business arrangement or understanding with [Bluestone]; [or] ...
>
> (d) engage or participate in any business or practice within the Practice Territory that is in competition with the business of [Bluestone] without [Bluestone's] written permission ....

Compl. Ex. A, Art. 6.1. "Practice Territory" is defined as "[t]he geographic area within a radius of ten (10) miles of any assisted living, memory care, skilled nursing or group home community/facility or location from which [Moericke or Mattice] provide[d] medical services on behalf of" Bluestone. Id.

Moericke resigned from Bluestone on October 21, 2016, effective November 4, 2016. Compl. Ex. C. Mattice followed suit by departing Bluestone on December 27, 2016. Id. Ex. D. Moericke began working for defendant Synergy Medical Service, LLC, a competitor of Bluestone, on November 28, 2016. Moericke Decl. ¶ 7. After reviewing the Agreement, Synergy assigned Moericke to facilities in the Green Bay area because she did not see patients there while employed by Bluestone. Id. ¶ 10. Moericke maintains

2

that she has not provided medical services on behalf of Synergy at any facility she serviced during her tenure with Bluestone. Id. ¶ 11.

Synergy hired Mattice on January 3, 2017, and assigned her to facilities in Appleton, which is outside the territory she covered while employed by Bluestone. Mattice Decl. ¶¶ 10, 13. Synergy also assigned Mattice to certain nursing homes in Green Bay because, according to Mattice, Bluestone does not provide nursing home care. Id. ¶ 14. On January 15, 2017, Mattice also began providing services to certain of her former Bluestone patients because Bluestone, at least in part, withdrew from the market. Id. ¶ 17. Although whether Bluestone withdrew from the entire Wisconsin territory at issue is unclear, the record does support a finding that Bluestone stopped doing business in at least some of the facilities Synergy now serves. See Williams Decl. Exs. 1-5.

On February 2, 2017, Bluestone filed this suit alleging that Moericke and Mattice breached the non-competition and other covenants in the Agreement, that Mattice breached her duty of loyalty to Bluestone, and that Synergy tortiously interfered with the Agreement. Bluestone seeks damages and declaratory and injunctive relief. The next day, Bluestone moved for a temporary restraining order to enjoin Moericke and Mattice from violating the

Agreement.[1]  After full briefing and oral argument, the court denied the motion from the bench.[2]  In so ruling, the court relied on the four familiar factors set forth in <u>Dataphase Sys., Inc. v. C.L. Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  The court provides further analysis for its decision here.

**DISCUSSION**

A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety.  <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003).  The court considers four factors in determining whether a TRO should issue:  (1) the likelihood of success on the merits, (2) the threat of irreparable harm in the absence of relief, (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party, and (4) the public interest.  <u>Dataphase</u>, 640 F.2d at 114.

As stated at the hearing, Bluestone has not met its burden of establishing the need for the extraordinary remedy of temporary

---

[1] Bluestone initially moved for a TRO and preliminary injunction, but later withdrew its request for a preliminary injunction.  Bluestone has reserved the right to move for a preliminary injunction after the parties have engaged in some discovery.  Bluestone does not seek injunctive relief against Synergy.

[2] At the hearing, Bluestone stated it was willing to narrow the scope of its proposed relief to allow Moericke and Mattice to continue providing care to certain patients.  The extent of its concession is unclear, however.

4

injunctive relief. Most notably, Bluestone has failed to establish irreparable harm. See Watkins, 346 F.3d at 844 (noting that the "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny" injunctive relief). Bluestone has not established that its harm cannot be addressed through damages. See Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009) ("Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."); Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 426 (8th Cir. 1996) ("[E]conomic loss does not, in and of itself, constitute irreparable harm," and "revenues and customers lost to competition which can be regained through competition are not irreparable.") (internal quotations and citations omitted). If Moericke and Mattice have violated the Agreement by providing care to patients at Bluestone facilities, Bluestone should be able to readily quantify the costs of those services. Bluestone does not deny that some aspects of its alleged harm can be quantified and compensated by an award of damages, but argues that it could suffer a loss of goodwill as a result of defendant's actions. Although damage to goodwill may qualify as irreparable harm, United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 741 (8th Cir. 2002), general allegations about such harm do not suffice. See Watkins, 346 F.3d at 846 (rejecting loss of goodwill as a basis for injunctive relief where plaintiffs alleged

"generally that their customer relationships are being irreparably harmed and that their goodwill is being permanently diminished"). Nor does potential or speculative harm, as alleged here, suffice. See Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1355 (8th Cir. 1995) ("The possible harm identified is wholly speculative and because it is, it cannot be called irreparable harm.").

The court also concludes that the remaining factors weigh in favor of denying injunctive relief. With respect to the likelihood of success on the merits, Bluestone's admission that it has, at least in part, withdrawn from the market substantially undermines its claims. The Agreement precludes Moericke and Mattice from providing care "to any residential care facility serviced by [Bluestone]" and from participating in "any business or practice within the Practice Territory that is in competition with the business of [Bluestone] without [Bluestone's] written permission." Compl. Ex. A, Art. 6.1. If Bluestone is no longer in business in the relevant geographical area, then Moericke and Mattice are not providing care to facilities "serviced by" Bluestone, nor are they "in competition" with Bluestone. As such, they would not be in violation of the Agreement. To the extent Bluestone still provides services in the relevant geographical area, the court is unable to conclude, based on the current record, that Moericke and Mattice

6

have breached even a narrow aspect of the Agreement.

The court next finds that the balance of the harms weighs against granting the motion. It is possible that Bluestone will be harmed if Moericke and Mattice have directed patients from Bluestone to Synergy and are allowed to continue to do so. If the TRO were granted, however, Moericke and Mattice would necessarily be subjected to the greater harm of losing the ability to earn a living in their chosen profession. See Katch, LLC v. Sweetser, No. 15-CV-3760, 2015 WL 6942132, at *10 (D. Minn. Nov. 10, 2015) ("[A] person's right to labor in any occupation in which he is fit to engage is a valuable right, which should not be taken from him, or limited, by injunction, except in a clear case showing the justice and necessity therefor.").

The public interest also weighs against granting injunctive relief. There appears to be no dispute that patients in some of the more rural facilities would not have alternative care options were Moericke and Mattice precluded from providing care to them. The public interest strongly favors allowing them to provide medical care to those in need.

Finally, the purpose of a TRO is to "preserve the status quo until the merits [of the case] are determined." Dataphase, 640 F.2d at 113. Here, as noted, maintaining the status quo would allow Moericke and Mattice to continue providing medical care to patients who would otherwise not have ready access to health care.

7

Bluestone acknowledges that, in this regard, the status quo should be maintained. Under the circumstances, injunctive relief is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for a temporary restraining order [ECF No. 14] is denied.

Dated: February 13, 2017

s/David S. Doty
David S. Doty, Judge
United States District Court
